IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN NIKOLS, an individual<br><br>    Plaintiff,<br><br><br><br>    v.<br><br><br>DAVID CHESNOFF, an individual; and GOODMAN & CHESNOFF, a Nevada professional corporation<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br><br>Case No. 2:10-CV-0004-TS |

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss. Defendants argue that

the equitable lien and Occupying Claimant Act claims should be dismissed due to a failure to

state a claim upon which relief can be granted pursuant to Rule 12(b)(6); that the quiet title and

equitable lien claims should be dismissed pursuant to res judicata; that the abstention doctrine

bars jurisdiction in this case pursuant to *Younger v. Harris*;[1] and that the quiet title, equitable

lien, and Occupying Claimant Act claims should be dismissed due to a failure to join an

indispensable party pursuant to Rule 12(b)(7). Defendants also motion for attorney fees and costs

incurred in litigation on the ground that Plaintiff's claims were brought without merit and in bad

faith. For the reasons discussed below, the Court dismisses Plaintiff's Occupying Claimant Act

---

[1] 401 U.S. 37 (1971).

claim pursuant to Rule 12(b)(6). Further, the Court finds that Plaintiff's equitable lien and quiet title claims are barred by res judicata. In addition, because the Court finds that all three claims were reasonably brought, it denies Defendants' motion for attorney fees.

## II. BACKGROUND FACTS

The following facts are undisputed. In 2002, Michael Nikols ("Michael") was arrested for distribution of a controlled substance. In 2005, Michael hired David Chesnoff ("Defendant") to represent him, entering into an attorney-client retainer agreement with Defendant. Michael agreed to pay Defendant $350,000 to represent him in *United States v. Michael John Nikols,*[2] regardless of the outcome.[3] John Nikols ("Plaintiff"), Michael's father, paid $160,000 of the fee, but the remaining $190,000 went unpaid.[4] In 2005, Michael pled guilty to distribution of a controlled substance.

In December of 2005, Defendant, concerned that he may never receive the remaining amount of his retainer fee, obtained a prejudgment writ of attachment in state court on four parcels ("the Parcels") in Murray, Utah, which were titled in Michael's name at the time.[5] On January 31, 2006, after the prejudgment writ of attachment, Michael transferred his interest in the Parcels by quitclaim deed to Plaintiff. In August 2007, a Utah state court granted Defendant's Motion for Summary Judgment, awarding him the $190,000 of unpaid fees.[6] The state court further held that the prejudgment writ of attachment would continue as a post-judgment writ of

---

[2] No. 2:04-CR-00786 PGC.

[3] Docket No. 11, at 3.

[4] *Id.*

[5] *Id*.

[6] *Id*. at 4.

attachment on the Parcels.[7]  The state court, however, prohibited execution of the attachment until Plaintiff, who claimed true ownership of the Parcels, could conduct discovery and assert his claims to an interest in the Parcels.

In April 2008, following post-judgment discovery and hearing, the state court held that Plaintiff failed to meet his burden of establishing that a resulting trust existed with respect to the Parcels.[8]  The state court further held Michael to be the owner when Defendant attached the Parcels in December 2005.  As a result, Defendant was entitled to proceed with the execution of the attachment.[9]  Plaintiff appealed and, in a March 2009 decision, the Utah Court of Appeals affirmed the trial court's decision.[10]

Before Defendant was able to proceed with the writ of execution on the Parcels, the federal government put a *lis pendens* on the Parcels, claiming relation back to the original seizure, which, if proved, would put the federal government interest in the Parcels prior to Defendant's writ of attachment.  In June 2009, after having been granted a new trial in his federal criminal case, Michael again pled guilty to distribution of a controlled substance. The following November he was sentenced and the federal government released its *lis pendens*.

In December 2009, Defendant, after waiting for the federal government to release its *lis pendens* on the Parcels, obtained a writ of execution on the Parcels.[11]  The Salt Lake County Sheriff served the writ on both Michael and Plaintiff on December 3, 2009, and set the sheriff's

---

[7] *Id.*

[8] *See* Docket No. 11, Ex. C at 4.

[9] *Id.*

[10] *Nikols v. Chesnoff*, 206 P.3d 295 (Utah Ct. App. 2009).

[11] Docket No. 11, Ex. E.

sale for January 12, 2010. In response, both Michael and Plaintiff filed *pro se* objections to the

writ in Utah state court. On January 6, 2010, the state court denied all of the Plaintiff's

objections presented by Michael and authorized the January 12, 2010 sheriff's sale to proceed.[12]

Subsequently, Plaintiff filed a motion for emergency writ to stay the sheriff's sale in the Utah

Supreme Court. The motion was transferred to the Utah Court of Appeals and subsequently

denied.[13] Plaintiff then filed a motion for a temporary restraining order in this Court on January

11, 2010. This Court denied Plaintiff's motion on January 12, 2010. On January 12, 2010,

Defendant credit bid his judgment at the sheriff's sale of the Parcels.

### III. PRESENT MOTION

In this instant case, Plaintiff alleges claims asserting his ownership of the Parcels. His

claims seek: (1) to quiet his title in the Parcels, specifically seeking declaration of his title as

superior to Defendant's; (2) an equitable lien on the Parcel superior to any interest Defendant

claims; and (3) to recover the value of the improvements Plaintiff made to the Parcels after he

bought them and before Defendant attached them, pursuant to the Occupying Claimants Act

(hereinafter "the Act").[14]

In response, Defendant argues that (1) all of Plaintiff's claims should be dismissed due to

his failure to join an indispensable party (Michael), pursuant to Fed. R. Civ. P. 12(b)(7); (2)

Plaintiff's claims to equitable lien and the Occupying Claimant Act should be dismissed due to a

failure to state a claim upon which relief can be granted; (3) this Court should abstain from

exercising jurisdiction pursuant to the abstention doctrine; (4) Plaintiff's claims to quiet title and

---

[12] *See* Docket No. 11, Ex. H at 9-13.

[13] *See* Docket, case no. 20100046-CA.

[14] UTAH CODE Ann. § 57-6-1.

equitable lien should be precluded pursuant to res judicata; and (5) Defendant should be awarded attorney fees and costs incurred pursuant to Utah Code Ann. § 78B-5-825.

## IV. SUBJECT MATTER JURISDICTION

Jurisdictional provision are set forth in 28 U.S.C.S. § 1332(a), which provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." "A case falls within the federal district court's original jurisdiction only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State."[15] Here, there is a civil action, it involves an amount in controversy exceeding $75,000, and there is diversity of citizenship among the parties, the Plaintiff and the Defendants being from Utah and Nevada, respectively. Therefore, this Court has subject matter jurisdiction over the instant case.

## V. OCCUPYING CLAIMANT CLAIM

### A. 12(b)(6) Motion to Dismiss Standard

An assessment of a 12(b)(6) Motion to Dismiss requires the court to "look for plausibility in the complaint."[16] Under this standard, "a complaint must include enough facts to state a claim to relief that is plausible on its face."[17] Thus, for a Rule 12(b)(6) motion to succeed, it must appear that the plaintiff has failed to include enough facts to state a claim to relief that is plausible on its face. Additionally, in resolving a 12(b)(6) motion, a court may not consider matters outside the pleadings, unless those documents are attached to the complaint or are

---

[15] 28 U.S.C.S. § 1332(a).

[16] *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (quotations omitted).

[17] *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

referenced in the complaint.[18]  If it does consider matters outside the pleadings, the Court must

convert the motion to dismiss into a motion for summary judgment while providing the parties

with notice so that all factual allegations may be met with countervailing evidence.[19]  However,

the Court may take judicial notice of records from state proceedings in resolving a motion to

dismiss without converting the motion into one for summary judgment.

Plaintiff has submitted the state court orders and requested that the Court take judicial

notice.  Defendant has not objected and has addressed these orders.  Thus, the Court will take

judicial notice of the state court material and considers them without converting the motion to

dismiss to one for summary judgment.[20]

B. Discussion

Defendant argues that the Plaintiff failed to state a claim upon which relief can be granted

because the Occupying Claimant Act (the Act) does not apply to Defendant's judgment lien.  The

Act states:

> Where an occupant of real estate has color of title to the real estate, and in good
> faith has made valuable improvements on the real estate, and is afterwards in a
> proper action found not to be the owner, no execution shall issue to put owner in
> possession of the real estate after the filing of a complaint as hereinafter provided,
> until the provisions of this chapter have been complied with.[21]

For the Act to apply to Defendant, he would have to be the "owner" of the Parcels.  The

question is whether Defendant's writ of attachment makes him an "owner" of the Parcels within

the meaning of the Act.  If it does, Plaintiff has an actionable claim upon which relief can be

---

[18] *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999).

[19] *See Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005) (quotations omitted).

[20] *See Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

[21] UTAH CODE Ann. § 57-6-1.

granted.  If not, Plaintiff cannot recover against the Defendant under the Act, and a 12(b)(6) dismissal of the claim would be appropriate.

In answering this question, the Court must view the facts in the light most favorable to the nonmoving party.  Defendant in this case is not a title holder of the Parcels.  Michael was the record holder prior to 2006 when he conveyed his interest in the Parcels to Plaintiff via quitclaim deed.  Plaintiff was the record owner between that quitclaim deed in 2006 until the execution sale after this case was filed.  Defendant instead has a post-judgment writ of attachment, entitling him to the proceeds from a sheriff's sale of the property. Defendant cites the Supreme Court of Utah in clarifying that the Act's purpose is "to entitle the bona fide claimant . . . to recover value of improvements to the extent that they unjustly enrich the record owner."[22]

Plaintiff counters that Defendant's judgment lien is tantamount to ownership.  Plaintiff cites the Supreme Court of Utah which defined ownership as "a collection of rights to possess, to use and to enjoy property, including the right to sell and transmit. . . . [T]he term owner is often used to characterize the possessor of an interest less than that of absolute ownership."[23]  Under this analysis, the question becomes whether Defendant's judgment lien grants him the right to possess, use and enjoy the property, and the right to sell and transmit it.  Plaintiff argues that Defendant's judgment lien does grant such rights, therefore making him an owner for the purposes of the Act.

Defendant points out, however, that it is not Defendant but the court and the sheriff who have the authority to sell the Parcels to satisfy the judgment.  Moreover, *Jeff,* as relied on by

---

[22] *Reimann v. Baum*, 203 P.2d 387, 392 (Utah 1949).

[23] *Jeff v. Stubbs*, 970 P.2d 1234, 1241-42 (Utah 1998) (quoting 63C Am. Jur. 2d Property § 26 (1997)).

Plaintiff, is distinguishable from the instant case.  In *Jeff*, the question was whether an occupying

claimant with a good faith belief in a life interest could recover for improvements against the fee

simple record owner.  Here, the question is whether the holder of a judgment lien is an owner.

The Court therefore does not find *Jeff* applicable.

Further, in a diversity case such as this one, the court applies the law of the forum state.

Therefore, this Court "defer[s] to the most recent judgments of the [Utah] Supreme Court, and if

no controlling precedent exists, [this Court] attempt[s] to predict how that court would rule."[24]

Due to an absence of case law construing a judgment lien holder as an "owner," the Court

predicts that the Utah Supreme Court would not so construe the Act.  Plaintiff cites no case law

from any jurisdiction holding a judgment lien holder to be an "owner" of real property within the

meaning of the Act nor does he cite any other authority for such an interpretation.  Plaintiff has

therefore failed to state a set of facts to make relief plausible on its face.  Defendant's 12(b)(6)

motion to dismiss the claim under the Occupying Claimant Act will be granted.

## VI. EQUITABLE LIEN AND QUIET TITLE CLAIMS

### A. Res Judicata Standard

Defendant argues that Plaintiff should be precluded from bringing claims to quiet title

and equitable lien pursuant to Fed. R. Civ. P. 8(c)(1), the doctrine of res judicata or claim

preclusion. The doctrine of res judicata holds that a party is prohibited from

> [r]elitigating a legal claim that was or could have been the subject of a previously
> issued final judgment. Claim preclusion applies when three elements exist: (1) a
> final judgment on the merits in an earlier action; (2) identity of the parties in the
> two suits; and (3) identity of the cause of action in both suits. If the requirements
> are met, res judicata is appropriate unless the party seeking to avoid preclusion did

---

[24] *Safeco Ins. Co. of America v. Hilderbrand*, 602 F.3d 1159, 1163 (10th Cir. 2010) (citing
*Kansas Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 866 (10th Cir. 2003) and *Long v. St. Paul
Fire & Maine Ins. Co.*, 589 F.3d 1075, 1081 (10th Cir. 2009)).

not have a full and fair opportunity to litigate the claim in the prior suit.[25]

## B. Discussion

Concerning the first element, the issue is whether the post-judgment determination of Plaintiff's property interest in the parcels constitutes a final judgment. A final judgment requires due process of law. If the post-judgment proceedings provide for due process, then the post-judgment constitutes a final decision. If the post-judgment did not, there is no final decision, and the first element would not be satisfied.

Plaintiff argues that the post-judgment decision did not afford due process of law, and is therefore not a final decision.[26] Plaintiff cites *Tremco*,[27] holding that a final decision or a civil action is "a proceeding subject to the full spectrum of due process."[28] In contrast, a post-judgment collection proceeding is not required to prescribe to the full spectrum of due process.

Plaintiff further cites *Tremco*, holding that a "violation of due process occurs if a court permits a cause of action to proceed under those rules promulgated to assist in the collection efforts of the judgment creditor."[29] Plaintiff argues that the post-judgment hearing did not comply with due process of law, preventing Plaintiff from a full and fair opportunity to litigate the suit, thereby barring the application of claim preclusion to Plaintiff's instant claims.

Defendant counters that Plaintiff's post-judgment proceeding afforded him the full spectrum of due process. Defendant points out that the trial court granted Plaintiff the

---

[25] *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 1985).

[26] Docket No. 24, at 10-11.

[27] *Brigham Young University v. Tremco Consultants, Inc.,* 156 P.3d 782 (Utah 2007).

[28] *Id.* at 790.

[29] *Id.*

opportunity to present his claims to the court regarding his interest in the Parcels. The post-judgment proceeding included discovery, an evidentiary hearing, and an appeal.[30] After the Utah Court of Appeals affirmed the trial court's decision, Plaintiff did not file a petition for writ of certiorari with the Utah Supreme Court. At this point, Defendant argues, the decision became a final judgment because it afforded Plaintiff due process.

*Tremco* is distinguishable from the instant case. In *Tremco*, the post-judgment proceeding involved the court extending liability to third parties never joined in the suit, clearly violating those third parties' due process rights. Here, on the other hand, Plaintiff was both a named party in the post-judgment proceeding and was afforded full due process rights through the discovery, hearing, and appellate process involved in the state court challenge to the writ of attachment.

Further, in the present case, unlike *Tremco*, the judgment debtor, Michael, was the record owner of the property. State law provides a procedure for claimants to an interest in the property to oppose the enforcement of the judgment lien by a writ of execution. Plaintiff took full advantage of that procedure. If he had an objection to the jurisdiction of the state court to determine that he had not met his burden on that issue, he should have raised it in the appeal to the Utah appellate courts. Unlike the *Tremco* parties, he did not raise this issue in his appeal of the state court's determination in the post-judgment proceeding that he had not shown a purchase money relating trust.[31] Because he did not contest jurisdiction to the proceeding, and because the proceeding included discovery, an evidentiary hearing, and an appeal, this Court finds that the judgment procedure was a final judgment.

---

[30] Docket No. 26, at 7. *See also* Order Denying Discharge, Ex. B; *Nikols v. Chesnoff*, 206 P.3d 295 (Utah Ct. App. 2009).

[31] *Nikols v. Chesnoff*, 206 P.3d 295 (Utah Ct. App. 2009).

The second element is whether the identites of the parties are the same in both suits. This element is easily satisfied, as Nikols and Chesnoff are respectively the Plaintiff and Defendant in both suits.

The third element is whether the cause of action is the same in both cases. In determining whether the cause of action is the same, the Tenth Circuit applies the "transactional approach," which constitutes determining whether the causes of action involved include "all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."[32] Plaintiff argues that the "transaction approach" is the wrong standard, and that the Court should apply the "identity of facts or evidence test," which requires the court to focus on whether "[t]he two causes of action rest on a different state of facts and evidence of a different kind or character is necessary to sustain the two causes of action."[33] Regardless of which standard this Court applies, the underlying rationale of claim preclusion, as articulated by the Supreme Court, is that "the final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[34]

In the instant case, the causes of action brought in this later suit could have been raised in the previous state proceeding. In the language of the "transactional approach," the quiet title and equitable lien claims arise out of the same transaction as Plaintiff's purchase money resulting theory. All three claims involve Plaintiff's having purchased, paid taxes, and possessed the Parcels. Further, applying "the identity of facts or evidence test," the quiet title and equitable lien claims rely on the same state of facts and evidence as did the purchase money resulting trust

---

[32] *Nwonsun v. General Mills Restaurants*, 124 F.3d 1255, 1257 (10th Cir. 1997).

[33] *Searle Bros. v. Searle*, 588 P.2d 689, 690 (Utah 1978).

[34] *Allen v. McCurry*, 449 US 90, 94 (1980).

claim. While these claims are based on different legal theories, they rest on the same set of facts.

Lastly, Plaintiff clearly had the opportunity to bring these claims in the previous state proceeding,

but failed to do so. It is clear that the causes of action are identical according to both the

"transactional" and "the identity of facts" tests, thereby meeting the third element. Therefore,

these claims are barred by res judicata.


## VII. ATTORNEY FEES

Defendant argues that he should be awarded attorney fees and costs incurred in defending

this suit pursuant to Utah Code Ann. § 78B-5-825. In a case brought to this Court on diversity,

the matter of attorney fees is a substantive legal issue and is therefore controlled by state law.[35]

Utah Code Ann. § 78B-5-825 states that reasonable attorney fees shall be awarded "to a prevailing

party if the court determines that the action or defense to the action was without merit and not

brought or asserted in good faith."[36] Thus, in order to be awarded attorney fees, (1) the moving

party must prevail, (2) the claim must be asserted by the non-moving party without merit and (3)

the claim must not be brought in good faith. While Defendant has made a fair showing that this

suit has no merit, he has not met his burden establishing that it was not brought in good faith. To

establish good faith, the Utah Supreme Court has stated three factors: (1) "an honest belief in the

propriety of the activities in question; (2) no intent to take unconscionable advantage of others;

and (3) no intent to, or knowledge of the fact that the activities in question hinder, delay, or

---

[35] *See Cowley v. Porter,* 2005 UT App 518, ¶ 50 (Utah Ct. App. 2005) (quoting *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 46 (Utah 2004)).

[36] UTAH CODE ANN. § 78B-5-825. *See also Hermes Assoc. v. Park's Sportsman*, 813 P.2d 1221, 1225 (Utah Ct. App. 1991).

defraud others."[37]  Defendant has failed to show that Plaintiff did not have an honest belief in the propriety of his suit or an intent to take unconscionable advantage of others. Plaintiff could very well be making a good faith effort to protect his alleged property interest in the Parcels via any available legal means. While his suit lacks merit, it cannot be said that Plaintiff is acting in bad faith. Therefore, Defendant's motion for attorney fees is denied.

## VIII. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss the Occupying Claimant Act claim (Docket No. 10) pursuant to Rule 12(b)(6) is GRANTED.  It is further

ORDERED that Defendant's Motion to Dismiss the equitable lien and quiet title claims (Docket No. 10) pursuant to the doctrine of Res Judicata is GRANTED.  It is further

ORDERED that Defendant's Motion for Sanctions is DENIED. It is further

ORDERED that all other pending motions are moot. The clerk of the court is directed to close this case.

DATED   June 28, 2010

BY THE COURT:

_____

TED STEWART

United States District Judge

---

[37] *Still Standing Stable, LLC v. Allen,* 2005 UT 46 (Utah 2005).